STATE OF NORTH CAROLINA           IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
COUNTY OF DURHAM           20 CVS 1440

| | | |
|---|---|---|
| JOHN DOE | ) | |
|     Plaintiff, | ) | |
| v. | ) | |
| | ) | **AFFIDAVIT IN SUPPORT** |
| DUKE UNIVERSITY | ) | **OF PRELIMINARY INJUNCTION** |
| | ) | |
|     Defendant. | ) | |
| _____ | ) | |

NOW COMES Mr. Brett Sokolow herein, being first duly sworn and says here attached is a copy of my report. All facts and opinions contained therein are true of my own knowledge except as to those matters and things herein stated upon information and belief, and as to those matters and things, I believe them to be true.

This the 29th day of October 2020

I affirm, under the penalties for perjury, that the foregoing representation(s) is (are) true.

                                  *Brett A. Sokolow*
                                  Brett A. Sokolow (Oct 29, 2020 11:14 PDT)
                               _____
                                  Brett Sokolow

# Affidavit of BS

Final Audit Report            2020-10-29

| | |
|---|---|
| Created: | 2020-10-29 |
| By: | emilia Beskind (ebeskind@mac.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAD1VsipMz3DdJRCPRk4mLbjlI3ZojdIfV |

## "Affidavit of BS" History

- Document created by emilia Beskind (ebeskind@mac.com)
  2020-10-29 - 4:09:39 PM GMT- IP address: 98.101.153.126

- Document emailed to Brett A. Sokolow (brett@atixa.org) for signature
  2020-10-29 - 4:10:24 PM GMT

- Email viewed by Brett A. Sokolow (brett@atixa.org)
  2020-10-29 - 6:13:56 PM GMT- IP address: 47.156.175.127

- Document e-signed by Brett A. Sokolow (brett@atixa.org)
  Signature Date: 2020-10-29 - 6:14:21 PM GMT - Time Source: server- IP address: 47.156.175.127

- Agreement completed.
  2020-10-29 - 6:14:21 PM GMT





JOHN DOE

v.

DUKE UNIVERSITY

AFFIDAVIT

BY:

BRETT A. SOKOLOW, ESQ.
EXPERT WITNESS FOR PLAINTIFF JOHN DOE

OCTOBER 29, 2020

I. QUALIFICATIONS AND EXPERIENCE

Brett A. Sokolow, Esq. Chair, TNG; President, ATIXA

I received my Juris Doctorate in 1997 from the Villanova University School of Law. I am licensed to practice in Pennsylvania and New Jersey. I have a B.A. in International Studies from the College of William and Mary, which I received in 1993.

I have been a consultant to higher education since 1997. I founded The NCHERM Group, LLC, (formerly the National Center for Higher Education Risk Management), in 2000. Today, it is one of the largest higher education-specific law practices in the country. The NCHERM Group currently serves as legal counsel to more than 60 colleges and universities and has served more than 250 since its inception.

I have served as a guest speaker/educator for students on alcohol, sexual assault, hazing and risk management to over 2,200 colleges, and have provided risk management consulting and/or legal services to the administrations of more than 4,000 colleges, universities, schools, fraternities, sororities, chapters, governmental agencies and military institutions. I have consulted on litigation, liability, negligence, foreseeability, special relationships, duty of care, event management, student organizations risk management, risk mitigation, insurance, FERPA compliance, ADA, Section 504, Title IX, Clery Act, state law, 1st Amendment, academic freedom, search and seizure, admissions, and dozens of other areas impacting higher education law.

I have been involved with more than 1,000 school and campus sexual misconduct cases as an investigator, trainer, consultant, expert, and attorney. I serve as President of ATIXA, the Association of Title IX Administrators. This association is the primary professional development venue for Title IX in the United States, with more than 5,500 members. ATIXA provides certifications to administrators responsible for coordination of Title IX compliance. ATIXA has certified more than 30,000 Title IX Coordinators and Civil Rights Investigators since 2012.

I have written codes of conduct for hundreds of colleges and universities and have done extensive policy and handbook development for school districts and colleges across the country. The ATIXA Model Sexual Misconduct Policy is in use by hundreds of colleges and universities, has been approved by the US Department of Justice and has been accepted to resolve complaints by the US Department of Education's Office for Civil Rights ("OCR"). I have provided hearing panel training to boards and administrators on more than 1,000 college and university campuses in the US and Canada. I have served as an expert in more than 75 cases related to school, college, and corporate liability.

I have authored twelve books and more than 100 articles in my field, including "College and University Liability for Violent Campus Attacks" published in the peer-reviewed Journal of College and University Law in April of 2008. I have presented at well over 100 state, regional and national conferences, including dozens of keynote addresses.

Through my experience as an attorney and consultant to colleges and universities, I have developed a special expertise in sex discrimination, sexual misconduct, and negligence related to institutional creation and remediation of hostile environments.

This is a summary of my background and qualifications. A copy of my curriculum vitae has been provided separately.

## II. BASIS FOR OPINIONS AND CONCLUSIONS

I base my analysis of and opinions in this matter on: my education and 22 years of professional experience as legal counsel to dozens of colleges and as a consultant to thousands of colleges and schools; on my research, writing and publications on alcohol, hazing, liability, sexual misconduct, threat assessment, and risk management, and on other publications regarding these topics generally known and respected as authoritative in the higher education community; on information, dialogue, and exchange with my peers and colleagues; from my experiences and involvement in professional associations, and the respect my organizations command as helping to define best practices for risk management in the field of higher education. I have reviewed the documents provided to me by counsel in regard to this case. All opinions stated are held to a reasonable degree of professional certainty.

## III. PRIOR EXPERT WITNESS WORK

*See attached CV*

## IV. BILLING RATE

$750/hr.

## V. DOCUMENTS REVIEWED

- Pleadings
    - Complaint
- Support documents
    - Notes of Duke University Associate Dean of Students Victoria Krebs 2/11/19

## VI. SUMMARY OF FACTS

Plaintiff and complainant are both Duke University students. On January 19, 2018, complainant chased after plaintiff Doe after a party, and invited herself to his room for the purpose of hooking up. In the presence of Doe's roommate, who did not leave the room, Doe and complainant had sexual intercourse in Doe's bed, which include Doe's consensual digital penetration of complainant's anus. Complainant then suggested that Doe penetrate her anally with his penis. The parties disagree on whether complainant insisted that Doe use manufactured lubricant. Complainant reports that she did. Doe denies that any discussion of

3 | P a g e

lubricant occurred. Doe attempted to penetrate complainant using spit for lubricant. This caused the Complainant to indicate pain or ask Doe to stop which he did. The parties also disagree as to what occurred thereafter. Doe asserts they continued with vaginal intercourse, and that after sex he was dismissive of her, thus giving rise to her complaint. Complainant reports that she left immediately after the anal assault, reported it to witnesses, and sought medical attention. She brought her complaint forward more than two years later. Duke found Doe in violation of its policies, and suspended him from the university for three semesters. His sanctions were upheld on appeal.

### VII. EXPERT OPINIONS

Duke University failed to uphold industry standards with respect to Doe's investigation, hearing, and appeal. The bullets below summarize my opinions in this matter.

- Duke University failed to share the entire file of evidence with John Doe prior to the hearing, depriving him of the ability to frame a full and fair defense of the charges.
- In doing so, Duke violated the rule of completeness, which has been applied by courts to university disciplinary proceedings on fairness grounds (See e.g., *Doe v. Regents of the Univ. of California, et al.*, 28 Cal. App. 5th 44 (2018)), when it selectively quoted one line from the notes of Dean Krebs, but omitted the balance of the two-page record.
- Having reviewed Krebs' notes in their entirety, I find them to be highly relevant to the matter, critical to Doe's defense, and the type of statement that would commonly be considered by a university sexual assault hearing panel in total, under prevailing industry standards.
    - The notes contain Doe's critical statement that he and complainant continued with vaginal intercourse after their attempt at anal penetration.
    - The notes contain Doe's clear assertion of consent.
    - The notes contain information that could help to corroborate Doe's defense that the complaint was made because he treated the complainant less than respectfully after the sex, and he attests to that in the notes.
- Duke seems to have argued that Krebs' notes were not requested by Doe, or that Dean McCullers cannot recall Doe's request for Krebs' note, but this feels like a red herring to me. Doe is entitled to the evidence regardless of whether it is requested, per industry standard practices.
- As a procedural error, this failure to provide the notes could have and should have been corrected by Duke through the appeal process, but Duke denied Doe's appeal, even going so far as to ignore sworn affidavits from Doe's attorneys – officers of the court – that Doe offered to prove that he had made the request of McCullers (who at first denied meeting with Doe, and then upon proof of a Zoom call, retreated to not being able to recall that he had requested the notes during that meeting).
- In the intake interview, Krebs became a witness, and should then have been treated as such by Duke in its investigation and hearing process.

- All witness evidence should have been shared during the investigation, according to Duke's own policy, not cherry-picked by a witness who usurped the authority of the panel to determine what evidence was relevant.
- Krebs was not interviewed during the investigation and instead only a portion of her notes were inserted into the investigation report, specific to Doe's statement the he "looked for lube".
- While Krebs attended the hearing as a witness, Doe was deprived of his ability (and right) to fully question her because he did not have access to her notes in full.
- From the record, it appears investigators had the full statement from Krebs, because they asked Doe about it during his interview. The specific part they asked him about went to his defense, and thus made it all the more important for the notes to have been fully available to Doe both during the investigation and hearing. That the full notes were not included was an arbitrary and capricious denial of Doe's rights.
- Duke mischarged John Doe and abused its own process, by notifying Doe that a sexual interaction that Duke knew to be consensual -- based on the complainant's *own* description -- was a potential violation of policy.
    - Duke University policy does not specify that conditions can be placed on consent by a party. Thus, Doe was held accountable for an act he was not given notice could be a violation of policy. That conclusion is apparent from any plain reading of Duke's policies on sexual assault and consent.
    - Whether the right kind or amount of lubrication was used in an act of sexual congress is not within a university's power as arbiter.
- When complainant stated that anal intercourse needed to stop, it did. Thus, Duke's conclusion that Doe committed sexual violence is in error. There is nothing in the record to assert that any violence occurred, as all parties agree the anal penetration was complainant's suggestion. Doe did not force her. She experienced pain, but that does not equate to violence. The pain or failure to penetrate comfortably may be a result of relative size, of Doe's relative inexperience with anal sex, with complainant's, or any number of other factors.
    - Sometimes young adults have less than ideal sexual interactions. For Duke to equate that with rape and constructively expel (a three-semester suspension is understood to be tantamount to expulsion within the industry) Doe is egregious.
- Duke failed to appropriately assess and account for the several variations in complainant's account, and thus erred in assigning greater credibility to her account than to Doe's, who claimed that vaginal intercourse continued after the anal penetration, again demonstrating consent.
- Duke's panel erroneously discredited Doe's credibility because of his statement to Krebs that before penetrating complainant anally, he "looked for lube." The panel contrasted this with his statement at the hearing that lube was not discussed by the parties. These are not mutually exclusive facts, and the weight that Duke's panel attached to them indicates both a potential for bias as well as unsupportable reasoning. Doe would not have needed to be asked for lube by complainant to know that it was needed. In fact, his

5 | P a g e

Case 1:20-cv-00996-LCB-LPA   Document 1-4   Filed 11/02/20   Page 7 of 9

- use of his own spit to create lubricant shows that he knew that lubrication would be needed.
- Doe's suspension is the result of failing to use the right lube, and try as I might, I cannot find where failing to use sufficient or the right type of lubricant is clearly articulated as a violation of any Duke policy. In fact, as noted above, Duke policy does not address the placing of conditions on consent at all. If a complainant says, "I will have intercourse with you only if you promise not to thrust more than ten times," is the 11th thrust a rape? If so, doesn't Duke's policy need to spell that out clearly?
- Implicit in Duke's reasoning is the conclusion that complainant set a condition on consent: use manufactured lube or we can't have anal intercourse. Except, the only evidence that complainant ever said that, or made her expectation expressly a condition, comes from complainant. Doe's version is that she told him, "Stick it in my ass."
    - Duke's panel seems to have made an implied assumption that manufactured lubricant works better than spit, but that evidence was not before the panel, and remains an unproven assertion. I have investigated dozens of cases in which spit served as an adequate lubricant for anal intercourse, according to all parties involved. Whether something is a better lubricant is different from the question of whether something is a sufficient lubricant, and my case experience also shows that anal intercourse can be inherently painful for the recipient regardless of the use of copious lubrication. Anal sex is not an act so much as a process. While lubrication is one part of preparation, to ensure anal sex is comfortable or tolerable, there are often other steps that should be undertaken, and it should be noted that the record reflects that complainant was fine with being penetrated anally by Doe without manufactured lubrication, and that he did so with his fingers throughout the vaginal intercourse. The absurdity of Duke's position is made clear if one by a hypothetical in which Doe had a tube a lubricant, and yet it only had one drop left. If he used it, instead of spit, would that suffice to meet complainant's condition? Did complainant specify sufficient manufactured lubricant, or just the use of manufactured lubricant? Was the goal anal sex that was not painful or uncomfortable? How is that related to consent?
- Duke hastened to complete this hearing before the August 14, 2020 deadline by which the 2020 Title IX regulations took effect. However, by the time of Doe's hearing on August 6th (with the decision letter dated after the deadline, of August 19th), Duke had already prepared a new process that was compliant with the regulations, which would have been far more protective of Doe's rights. Duke chose not to apply that process. A federal court recently temporarily enjoined Rennselaer Polytechnic University (RPI) in New York on similar facts because it already had a compliant process available, but chose to afford its John Doe a less protective process based on the date of the incident's occurrence. It is absolutely clear that under the 2020 regulations, the entire record of Krebs' notes would have been available to Doe at and before the Duke hearing. They state, in pertinent part:

    > Prior to completion of the investigative report, the recipient must send to each party and the party's advisor, if any, the evidence subject to inspection and review in an electronic format or a hard copy, and the parties must have at

6 | P a g e

Case 1:20-cv-00996-LCB-LPA   Document 1-4   Filed 11/02/20   Page 8 of 9

least 10 days to submit a written response, which the investigator will consider prior to completion of the investigative report. The recipient must make all such evidence subject to the parties' inspection and review available at any hearing to give each party equal opportunity to refer to such evidence during the hearing, including for purposes of cross-examination; and (vii) Create an investigative report that fairly summarizes relevant evidence and, at least 10 days prior to a hearing (if a hearing is required under this section or otherwise provided) or other time of determination regarding responsibility, send to each party and the party's advisor, if any, the investigative report in an electronic format or a hard copy, for their review and written response.

As a result of the foregoing, I hold the opinion that Duke's resolution of this complainant was substantively and procedurally unfair to Doe. I hold the foregoing opinions to a reasonable degree of professional certainty. I reserve the right to revise these opinions should the record be supplemented with additional information at a later date.

Respectfully submitted,

Brett A. Sokolow, Esq.
Chair, TNG
October 29, 2020