IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Civil Action No. 1:20-cv-996

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **RESPONSE IN OPPOSITION TO** |
| v. | ) | **PLAINTIFF'S MOTION TO** |
| | ) | **REMAND** |
| DUKE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant DUKE UNIVERSITY (*hereinafter*, "Duke" or "Defendant"), through

counsel and pursuant to Local Civil Rule 7.3(f), respectfully submits this Response in

Opposition to Plaintiff's Motion to Remand (DE 14).

## <u>NATURE OF THE MATTER BEFORE THE COURT</u>

Plaintiff has moved to remand, arguing that he has elected to proceed under state

law in state court and forgo his federal remedies, but however artfully Plaintiff has pleaded

his Complaint, this case remains fundamentally about whether, and to what extent,

Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688 ("Title IX")

applied to Plaintiff's disciplinary proceeding.

Plaintiff has attempted to plead around the source of the standards he seeks to apply,

arguing that Title IX touches this case no more than it would an alcohol violation under

Duke's policies. But the gravamen of Plaintiff's claims is the contention that Duke's

disciplinary process was "unfair," a claim which relies for meaning on recently-issued

federal Title IX regulations, known as the Final Rule on Title IX of the Education Amendments of 1972, 34 CFR Part 106 ("Final Rule"), which took effect on August 14, 2020. Despite Plaintiff's assertion that the rights he seeks to assert emanate from the "common law," he cannot locate a single North Carolina case to support this proposition, instead relying on out-of-state authority and repeatedly assuring the Court that the "fairness" rights he seeks to vindicate – which are on all fours with the Final Rule – arise under North Carolina law.

Even if the Court were to read narrowly the Complaint, as Plaintiff urges, Plaintiff still cannot escape the conclusion that the Court that adjudicates this case will have the task of being among the first in the country to interpret the Final Rule. One necessary predicate of Plaintiff's claims (emphasized in his remand brief) is that had Duke delayed the hearing, as Plaintiff requested, the rights afforded to him under the Final Rule would have been *different*. Plaintiff pressed this issue in his internal appeal documents, which he attaches to, and incorporates in, his Complaint. (DE 3 at 88). Plaintiff's putative expert opined the same, explicitly relying on the Final Rule. This case will be about whether those differences would have been different enough to have changed the outcome, since causation is an element Plaintiff's tort claims. As a result, the Court that adjudicates these claims will have to interpret as a matter of law the scope of those differences.

But the Court here need not even reach that issue because federal courts have repeatedly held that a Court considering remand may "look behind" the Complaint to combat artful pleading intended to avoid federal review of important federal issues. When

2

viewed as a whole, the Complaint, its exhibits, and affidavit of Plaintiff's expert demonstrate that Plaintiff seeks to enforce Title IX standards in state court under the guise of unsupported state law claims. Where, as here, a removing defendant shows a Plaintiff's state law claims to be a sham because they offer no meaningful right to relief, courts have agreed that remand is inappropriate.

Because Defendant properly removed this action, Plaintiff's motion to remand should be denied.

## STATEMENT OF ALLEGED FACTS

Plaintiff John Doe filed a Complaint asserting claims arising from disciplinary proceedings conducted by Duke related to allegations of sexual misconduct made against him by a female student (hereinafter referred to as "Complainant"). (Complaint ¶¶ 15, 25). At the time of the alleged sexual misconduct, Plaintiff was enrolled as a first-year student at Duke University. (DE 3 ¶ 15-16). Although Complainant went to the hospital and had a sexual assault forensic examination performed right away, she did not contact the Office of Student Conduct—the office at Duke charged with administering the Student Sexual Misconduct Policy and Procedures: Duke's Commitment to Title IX (the "Policy")—to discuss her report of sexual misconduct until a year later. (*Id.* ¶ 19).

After receiving Complainant's report, Victoria Krebs, Associate Dean of Students, Title IX Outreach and Response Coordinator, met with Plaintiff on February 11, 2018 to discuss the report. (*Id.* at ¶¶ 20-22). Because the Complainant indicated she did not want to move forward with the disciplinary process at the time, no further action was taken in

3

2018. (*Id.* at ¶ 24).

Under the Policy, however, a Complainant may initiate the complaint process at any point up until the time of a respondent's graduation. (*Id.* at p. 25-26). In May 2020, Complainant did just that and the disciplinary process commenced. (*Id.* ¶ 25). Duke assigned two trained investigators to conduct interviews of relevant witnesses. *Id.* After the interviews were conducted, an investigative report was prepared and provided to both parties. (*Id.* ¶ 26).

Pursuant to the Policy, respondents have five days to respond in writing to the report and provide feedback on the report, which is then reviewed by the Office of Student Conduct to determine if any changes or additions should be made based on the feedback provided. (*Id.* at p. 134). Included in the report was an excerpt of Dean Krebs' notes from her meeting with the Plaintiff in February 2018. (*Id.* ¶ 27). Although Plaintiff now contends that he raised concerns about the inclusion of Dean Krebs' notes in redacted form, (*Id.* ¶¶ 31-32), he does not, and cannot, allege that he put these alleged concerns into the written feedback he submitted about the investigative report, or that he requested in writing that full copies of the notes be included.

The disciplinary hearing took place on August 6, 2020. (*Id.* ¶ 32). The panel found that Plaintiff violated the Policy. The Complaint alleges that the redacted version of the notes was important to the panel's decision. (*Id.* ¶¶ 36, 38). Plaintiff received a three-semester suspension and other sanctions. (DE 3 at 37-40).

On September 2, Plaintiff submitted an appeal on the basis that there were

procedural errors that materially impacted the hearing panel's decision. (DE 3, p. 87). The appeal argued that Duke should have conducted the student conduct hearing under the new Title IX regulations, which took effect on August 14, 2020. (*Id.* ¶ 39; *see also* Ex. D to Complaint, DE 3 at 87-88). It also argued that the inclusion of the redacted note was a procedural error and attacked Dean Krebs' role in the disciplinary process, including by alleging that he was unable to question Dean Krebs because he did not receive her unredacted notes. On September 30, 2020, Plaintiff appeared before the Appeal Board, accompanied by his advisor, arguing, *inter alia*, that the University had erred in handling his case by not adhering to the Final Rule. *Id.*

On October 7, 2020, the appellate panel denied Plaintiff's appeal. (*Id.* at ¶ 40-43). The appeal letter explained that it was not an error to apply the Sexual Misconduct Policy instead of the new Final Rule, relying on guidance from the U.S. Department of Education's Office for Civil Rights stating that the Final Rule did not apply to conduct occurring before August 14, 2020. (*Id.* at 87-88). The appeal letter also explained that Plaintiff had the full opportunity to question Dean Krebs at the hearing. The letter further pointed out that Plaintiff had obtained the full, unredacted note prior to preparing his appeal, but had decided not to attach it, thus precluding the appellate panel from determining whether the full note would have "materially affected the hearing panel's decision," as required to grant an appeal.

On October 7, 2020, Plaintiff initiated this civil action in Durham County Superior Court, by filing a Summons and Complaint, and asserting the following claims: 1) Failure

5

to Provide Plaintiff with Common Law Fundamental Fairness and Due Process, 2) Breach of Contract, and 3) Negligence. (DE 3). Plaintiff attached several exhibits to the Complaint: (a) "Student Sexual Misconduct Policy and Procedures: Duke's Commitment to Title IX" [DE 3 at 1-36]; (b) a "Student Conduct Board Hearing Report" dated August 19, 2020 [*id.* at 37-40]; (c) a "Complaint of Sexual Misconduct Investigative Report" dated July 7, 2020 (*Id.* at 41-85); (d) correspondence dated October 7, 2020 from the chair of the Duke Appellate Board, giving the Board's determinations regarding procedural errors alleged by Plaintiff (*Id.* at 86-88); and (e) The Duke Community Standard in Practice: A Guide for Undergraduates 2017-2018 (*Id.* at 89-173). On November 2, 2020, Defendant timely removed this matter to federal court, and Plaintiff moved to remand on December 2, 2020.

On October 8, 2020, Plaintiff obtained a Temporary Restraining Order precluding Duke from enforcing any sanction against Plaintiff. In preparation for a hearing on the ensuing requested preliminary injunction, Plaintiff provided Duke with an affidavit from a putative expert, Brett Sokolow, who purported to provide opinions regarding various bases for Duke's liability in this case. Sokolow concluded that Duke should have provided Plaintiff with a Title IX Final Rule-compliant process, (DE 1-4, pp. 8-9), and that based on the Final Rule, Duke should have provided additional information to Plaintiff prior to his disciplinary hearing, *see id.*

6

## QUESTIONS PRESENTED

Was this action properly removed?

If this action is remanded, should Plaintiff's request for attorneys' fees and costs be denied?

## ARGUMENT

Plaintiff's Motion to Remand challenges the removal to this Court on the basis that this Court lacks jurisdiction over Plaintiff's claims. Removal from state court is proper if "the district courts of the United States have original jurisdiction" over the case, either through diversity jurisdiction or through federal question jurisdiction, if the action is one "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1441(a); *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) (citing 42 U.S.C. § 1331). Federal question jurisdiction may be invoked through "pleading a cause of action created by federal law" or through "state-law claims that implicate significant federal issues." *Id.* In the latter case, the state-law claims must "necessarily raise a stated federal issue" that is "actually disputed and substantial," which "a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314.

As discussed herein, Plaintiff's claims necessarily present a substantial and disputed issue of federal law that is appropriately adjudicated in a federal forum, and, as such, Defendant's removal was proper.

I.     **This action was properly removed because Plaintiff's claims arise under federal law.**

"[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see also Burrell v. Bayer Corp.*, 918 F.3d 372, 386 (4th Cir. 2019).

Whether the claim "arises under" federal law for removal purposes is determined by the "well-pleaded complaint" rule which also determines original federal question jurisdiction. *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808 (1986). However, "[a] plaintiff may not defeat removal by omitting to plead necessary federal questions." *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998). The artful pleading doctrine permits a court to "look behind" a complaint to determine whether a plaintiff is attempting to conceal the federal nature of his claim by fraud or obfuscation. *Maryland v. Phillip Morris Inc.,* 934 F. Supp. 173, 175 (D. Md.1996). "If a court concludes that a plaintiff has "artfully pleaded" claims in this fashion, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint. The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim." *Rivet*, 522 U.S. at 475.

Here, Plaintiff's claims arise under federal law because they necessarily raise the federal issue of Defendant's compliance with Title IX, and in particular whether Duke violated Plaintiff's rights by not conducting the student conduct hearing consistent with the

Final Rule regulations effective August 14, 2020.

A. **Plaintiff's claims for "Common Law Fundamental Fairness and Due Process" and "Negligence" necessarily raise federal questions.**

Plaintiff's claims identified as "Failure to Provide Plaintiff with Common Law Fundamental Fairness and Due Process" and "Common Law Negligence" necessarily raise federal issues. Plaintiff's only theories of recovery under these purported state-law claims depend upon interpreting Title IX, and not any source of rights, regulations, or any other authority under North Carolina law.

With regard to Plaintiff's claims for "Common Law Fundamental Fairness and Due Process," Plaintiff alleges that his "due process" rights were violated by "failing to allow him to review a key witness's notes prior to or during the hearing" and "not recusing Dean Krebs and her co-worker's *[sic]* at the Office of Student Conduct from the decision-making process once she became an important witness." Neither Plaintiff's Complaint nor Plaintiff's Brief is clear on the source of law for this claim, other than the using the term "Common Law" in the title of the claim and the conclusory allegation that the action "arises under the common law of North Carolina." (DE 3, ¶ 5).

Plaintiff's complaint has not identified any authority establishing such a right under the common law of North Carolina. And for good reason: "common law fundamental fairness and due process" is not a cause of action recognized under North Carolina law. The only decisions of any North Carolina courts, state or federal, applying the fundamental fairness standard to private entities are cases reviewing accreditation decisions for private colleges under the exclusive federal jurisdiction granted by the Higher Education Act. *See,*

*e.g., St. Andrews Presbyterian Coll. v. S. Ass'n of Colls. & Schs., Inc.*, 2007 WL 4219402 (M.D.N.C. 2007).[1]

As such, any alleged right that Plaintiff had to review Dean Krebs' notes in full does not arise under the common law of North Carolina. Rather, Plaintiff's contention that he was entitled to review these notes appears to stem from the Final Rule.

Although he avoids pleading it directly, Plaintiff attached to his Complaint documents establishing that he raised the same issues in his internal appeal as he now raises in this lawsuit – that he should have had greater access to information – then ties that right of access directly to Title IX. *See* Compl. Ex. D at 2. This document is integral to Plaintiff's complaint; it shows the basis on which the University made its decisions with respect to the disciplinary outcome, and the basis on which Plaintiff believed he had and has a right to relief to vacate the University's findings. In presenting this document as intrinsic to his Complaint, Plaintiff has placed the question of the Final Rule and its application to his case squarely at issue.

To the extent there were any ambiguity about that issue, it was eliminated when, in anticipation of a hearing on Plaintiff's Motion for Preliminary Injunction, Plaintiff identified Brett Sokolow as an expert witness to support his claims. Sokolow is the President of "ATIXA," an association of Title IX administrators, which Sokolow contends is "the primary professional development venue for Title IX in the United States." In his

---

[1] Plaintiff's Brief in Support of his Motion to Remand concedes that he is not challenging federal due process rights. (DE 15, 11-12).

10

affidavit, Sokolow emphasizes his background and experience in the area of Title IX. To support Plaintiff's contention that the University is liable to him and that he was entitled to review the full notes taken by Dean Krebs, Sokolow relies entirely on the Final Rule. Sokolow states that, "It is absolutely clear that under the 2020 regulations, the entire record of Krebs' notes would have been available to Doe at and before the Duke hearing." (DE 1-4 at 8). Sokolow then quotes extensively from the regulation as follows:

> Prior to completion of the investigative report, the recipient must send to each party and the party's advisor, if any, the evidence subject to inspection and review in an electronic format or a hard copy, and the parties must have at least 10 days to submit a written response, which the investigator will consider prior to completion of the investigative report. The recipient must make all such evidence subject to the parties' inspection and review available at any hearing to give each party equal opportunity to refer to such evidence during the hearing, including for purposes of cross-examination; and (vii) Create an investigative report that fairly summarizes relevant evidence and, at least 10 days prior to a hearing (if a hearing is required under this section or otherwise provided) or other time of determination regarding responsibility, send to each party and the party's advisor, if any, the investigative report in an electronic format or a hard copy, for their review and written response.

Sokolow contends that Duke should have conducted Plaintiff's disciplinary process using the Final Rule regulations, and notes that a federal court in New York recently issued a temporary injunction preventing a university from proceeding under the prior Title IX guidance under similar facts. Although Plaintiff's allegations are couched as a cause of action for "common law fundamental fairness," the only source of law to support this contention identified by Plaintiff is the Final Rule Title IX regulations.

With regard to Plaintiff's negligence claim, he likewise has not identified any North Carolina authority to support this claim. He alleges that Duke "owed a duty of care to

11

Plaintiff in the handling of the allegations against him and the resulting disciplinary process," and that, "a special relationship exists between a student and a university where the university has required the student to submit to an investigation and administrative judicial process, in this case a quasi-criminal process, for allegations serious enough to have suspension or expulsion as a consequence." (DE 3 ¶¶ 105-06).

However, to the extent any "duty" was owed to Plaintiff in this matter, it did not arise out of any North Carolina common law. No North Carolina Court has found a common law duty of care owed by a university to a student in the context of a disciplinary proceeding. The North Carolina Supreme Court has specifically held that "the student-university relationship, standing alone, does not constitute a special relationship giving rise to a duty of care." *Davidson v. Univ. of N.C. at Chapel Hill,* 142 N.C. App. 544, 556, 543 S.E.2d 920, 928 (2001). Here, none of the factors that gave rise to a special relationship in *Davidson*, such as the university's dependence upon or control of the student beyond the normal university-student relationship, have been alleged as existing between Duke and Plaintiff. Further, this Court has specifically found no common law duty owed by Duke in the absence of a special relationship. North Carolina courts have only recognized a special relationship between universities and students in a limited context, none of which are applicable in this case. *See e.g., McClean v. Duke Univ.*, 376 F. Supp. 3d 585, 617 (M.D.N.C. 2019) (finding no duty owed where Plaintiff did not allege anything that differentiated herself from other students, that suggested that Duke was in any way dependent upon her, or that her actions created any economic benefit for Duke).

12

The affidavit submitted by Plaintiff from his expert underscores this point. Instead of relying on any duty recognized under North Carolina law, Sokolow argues that Duke should have provided the process under the Final Rule regulations, citing to a case where "[a] federal court recently temporarily enjoined Rennselaer Polytechnic University (RPI) in New York on similar facts."[2] Sokolow's other citation is to *Doe v. Regents of the Univ. of California, et al.*, 28 Cal. App. 5th 44 (2018), where California law is the source of the "rule of completeness" and review of university disciplinary proceedings on fairness grounds, which are not North Carolina authorities and do not have a corollary under North Carolina common law. To the extent that North Carolina common law addresses judicial review of disputes in the university-student relationship, it does not sanction broad judicial "inquiry into the nuances of educational processes and theories." *Ryan v. Univ. of N. Carolina Hosps.*, 128 N.C. App. 300, 302, 494 S.E.2d 789, 791 (1998). In contrast, the nationwide "industry standard" on student conduct hearings in the area of sexual misconduct that Sokolow argues applies is informed principally by Title IX standards – it is certainly not supported by North Carolina law.

The foregoing demonstrates not only that Plaintiff's claims are grounded inescapably in Title IX, but also that neither the fairness nor the negligence claim is grounded in any theory that is recognizable under North Carolina law. Federal courts have denied remand motions where in addition to obviously avoiding federal causes of action,

---

[2] Notably, the only cause of action pled in that case was for Title IX violations. *See* the Complaint from Doe v. Rennselaer Polytechnic Institution, Case 1:20-cv-01185-DNH-DJS (N.D.N.Y. Sept. 28, 2020), attached as Exhibit A.

13

the state causes of action were a sham. In *Phillips v. City of Concord Parks and Recreation Department*, No. 1:10CV947, 2011 WL 2784079 (M.D.N.C. 2011), this Court denied a motion to remand because the plaintiff failed to state a theory of recovery actionable under state law. In *Phillips*, the plaintiff alleged that the defendant violated Title VII, but she attempted to avoid pursuing federal claims by alleging that the events had violated the defendants' workplace discrimination policies and making general references to "State Law or Local Ordinance." 2011 WL 2784079 at *6. Very similarly, Plaintiff argues here that his claims are based upon violations of Duke's Title IX policy, but fails to supply North Carolina authorities that would demonstrate that Plaintiff may recover under North Carolina law. Another similarity to *Phillips* is present in Plaintiff's repeated references to "North Carolina common law," like the *Phillips* plaintiff's reference to "State Law or Local Ordinance," because such references "do not indicate…that an alternative state law theory exists." *Id.* (*citing Bryan v. Bellsouth Comm., Inc.*, 377 F.3d 424, 431 n. 10 (4th Cir.2004)).

As set forth above, Plaintiff's claims for "common law fundamental fairness and due process" and "negligence" necessarily raise the federal question of Duke's compliance with Title IX standards, including the Final Rule regulations which took effect on August 14, 2020, and no alternative state law theory exists to support these claims.[3]

---

[3] Plaintiff's other claim, for breach of contract, has been recognized by North Carolina courts in only limited circumstances, and it is well settled that unilateral manuals and policy handbooks produced by an employer or university are not independent contracts and do not become a part of any contract unless expressly included. *See e.g., McClean v. Duke Univ.*, 376 F. Supp. 3d 585 (M.D.N.C. 2019), *Shaw v. Elon Univ.*, 400 F. Supp. 3d 360,

14

**B.    Plaintiff's Title IX theories are actually disputed between the parties.**

The parties actually dispute Plaintiff's allegations Duke violated Plaintiff's rights by not allowing his hearing to be conducted after August 14, 2020, when the Final Rule regulations took effect. This was a key issue in Plaintiff's internal disciplinary appeal, which the appellate panel considered but denied.  Plaintiff also identifies this issue as a key issue in their brief in support of their motion to remand. (DE 15, p. 14-15). While Plaintiff purports to "stipulate" that the new Title IX regulations were not in effect at the time of his hearing (DE 15, p. 14), as illustrated above they intend to argue that his hearing should have been continued so that it would be conducted under the new Title IX regulations, and that Dean Krebs denied a request for an extension of the hearing so that she would not be subjected to cross-examination.

Implicit in Plaintiff's argument is that he had some right to these procedures. This theory raises substantial federal questions, as it necessarily requires resolution of the disputed issue of the appropriate application of the new Title IX standards and the timing for when such standards should have been applied. Plaintiff's implicit argument is that Dean Krebs, who did not conduct the hearing and was not a decision-maker, was somehow biased against him, a standard once again arising from Title IX, rather than North Carolina

---

363 (M.D.N.C. 2019).  Even assuming, however, that the Policy can be considered a contract, it too will require consideration of the same core federal issue about application of the Final Rule.  In essence, Plaintiff's claim is that he was entitled to a different contract—a policy consistent with the new Final Rule—not the contract he alleges was formed by the Policy.

15

common law. *See* 34 CFR § 106.45(b)(1)(iii) (requiring that the Title IX Coordinator or investigator "not have a conflict of interest or bias for or against complainants or respondents generally or an individual complainant or respondent."). The parties dispute whether Dean Krebs' alleged actions would have created a bias against Plaintiff, but the source of the rights Plaintiff claims to have is Title IX, not North Carolina law.

The parties also dispute the scope of the difference that the Title IX regulations would have made in Plaintiff's hearing; a predicate of Plaintiff's claims is that the differences would have been great enough to cause a different outcome. In order to reach that conclusion, it is evident that Plaintiff must have a very different view of the scope of what the Final Rule requires. Duke anticipates that that issue would also have to be litigated in this case, an issue that it is aware of no other federal court having ruled on to date.

## C.    The Title IX issues raised in the Complaint are substantial.

Plaintiff's claims raise a substantial issue of federal law because Plaintiff's claims hinge partly upon the interpretation of a federal statute and new federal regulations, that is unsettled. The Supreme Court has stated that the "substantial" element refers to "the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. A substantial question "generally will involve a pure issue of law, rather than being fact bound and situation-specific because the crux of what makes a question substantial ... is that it is importan[t] to the federal system as a whole and not just to the particular parties in the immediate suit." *Burrell*, 918 F.3d at 385. The Supreme Court has found that a quintessential "substantial" issue concerns the "constitutionality or construction of a

16

federal statute." *Id.* Resolution of a federal issue that is "substantial" may also be "controlling in numerous other cases." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700 (2006).

While Plaintiff's Complaint raises a number of substantial federal questions, most importantly it raises the issue of whether Duke should have applied procedures compliant with the Final Rule regulations to Plaintiff, whose hearing took place the week before August 14, 2020, when the Final Rule became effective.[4] As alleged in Plaintiff's Complaint and further developed in the Sokolow Affidavit, Plaintiff's claims are not just based upon whether Duke complied with Title IX, but which version of Title IX should be used to evaluate Duke's process. Across the country, plaintiffs have and will continue to argue that the regulations effective August 14, 2020 should have applied to them. Whether an institution should have complied with extensive new federal regulations is squarely an issue of federal law, and a federal forum is the most appropriate location for the consistent adjudication of this substantial issue.

**D.      Adjudication of Plaintiff's quasi-Title IX claims by this Court is consistent with the federal-state balance approved by Congress.**

---

[4] The Department of Education has opined that the rule is not retroactive on several occasions, and does not apply to sexual harassment "that allegedly occurred prior to August 14, 2020." *See e.g.*, Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30061, 30072 (May 19, 2020); U.S. Dep't of Educ. Office for Civ. Rights, Questions and Answers Regarding the Department's Final Title IX Rule, Q&A 1 (Sept. 4, 2020).Dep't of Ed. Office for Civil Rights, "The Title IX Final Rule Is Effective on August 14, 2020, and Is Not Retroactive," Office for Civil Rights Blog (Aug. 5, 2020), https://www2.ed.gov/about/offices/list/ocr/blog/20200805.html.

17

The final element of the four-prong standard is also met here. Title IX claims are regularly adjudicated in federal courts. Thus, this is not a case where the Court is being asked to consider garden-variety state law claims typically limited to state court. *Burrell*, 918 F.3d at 386-87. In recognizing a private cause of action under Title IX for which money damages could be recovered, the United States Supreme Court assumed an active role in reviewing educational institutions' adjudication of sexual harassment complaints and allowing private plaintiffs to enforce Title IX through the federal courts by bringing actions against their institutions. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998); *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Ed.*, 526 U.S. 629 (1999). Litigation of Plaintiff's claims in this case stemming from Title IX will not "disrupt the federal-state balance approved by Congress." Further, to the extent the Final Rule regulations do apply, which is disputed, the new regulations preempt state law. 34 C.F.R. § 106.6(a).

**E.     This Court should apply the artful pleading doctrine to recognize the federal nature of Plaintiff's claims.**

"A plaintiff may not defeat removal by omitting to plead necessary federal questions." *Rivet*, 522 U.S. at 475. The artful pleading doctrine permits a court to "look behind" a complaint to determine whether a plaintiff is attempting to conceal the federal nature of his claim by fraud or obfuscation. *Phillip Morris*, 934 F. Supp. at 175. "If a court concludes that a plaintiff has 'artfully pleaded' claims in this fashion, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint. The artful pleading doctrine allows removal where a plaintiff omits "pleading

18

necessary federal questions" or federal law completely preempts a plaintiff's state-law claim." *Rivet*, 522 U.S. at 475.

Removal is permitted under the artful pleading doctrine if "(1) federal law has completely preempted the state law that serves as the basis for the plaintiff's complaint, or (2) a federal question, not pleaded in the plaintiff's complaint, is nonetheless both intrinsic and central to the plaintiff's cause of action." *Guckin v. Nagle*, 259 F.Supp.2d 406, 410 (E.D. Pa. 2003) (citing 14B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3722 (3d ed.1999)). Artful pleading refers to the manner in which some plaintiffs manage to plead claims that are actually federal (because they are either completely preempted, or based entirely on substantial federal questions) under state law. *Lippitt v. Raymond James Fin. Servs., Inc.,* 340 F.3d 1033, 1041-42 (9th Cir.2002); *Cheshire v. Coca–Cola Bottling Affiliated, Inc.,* 758 F. Supp. 1098, 1100 (D.S.C.1990). In such cases, a court need not "blind itself to the real gravamen of [the] claim." *Philip Morris,* 934 F. Supp. at 176 (quoting *In re Wiring Device Antitrust Litig.,* 498 F. Supp. 79, 82 (E.D.N.Y.1980)). Further, in "looking behind" a complaint when considering the artful pleading doctrine, a court may take into consideration documents beyond the complaint. *See e.g., Luby's Fuddruckers Restaurants, LLC v. Visa Inc.*, 342 F. Supp. 3d 306, 313–14 (E.D.N.Y. 2018). Here, the "real gravamen of the claim" is whether Plaintiff had any right to have the substantive and procedural requirements of the Final Rule applied to his student conduct hearing on August 6, 2020.

Courts in other jurisdictions have recognized that remand is inappropriate where

plaintiffs artfully plead around asserting a Title IX claim directly, but rely on Title IX standards as the basis of their purported state law claims. In *Perkins v. Alamo Heights Indep. Sch. Dist.*, the district court reviewed a complaint that alleged disparate disciplinary treatment between male and female cheerleaders and sought money damages, but purported to bring the claims under the Texas Constitution, and omitted any mention of Title IX. 204 F. Supp. 2d 991, 994 (W.D. Tex. 2002). The plaintiff also sought money damages, which were not available in claims under the Texas Constitution. *Id.* 996-97. Because the claims for disparate disciplinary treatment were really a Title IX cause of action and the damages sought were available under Title IX, but not the Texas causes of action, the court held that removal was proper. *Id*.

As in *Perkins*, Plaintiff has tried to avoid identifying Title IX as the source of any of the alleged rights. In the present case, as set forth above, Plaintiff's claims "arise under" federal law and are an attempt to litigate and attempt to assign Title IX standards to alleged common law claims. As such, this Court should apply the "artful pleading" doctrine to recognize that Plaintiff's purported state-law claims are artifice, interposed to conceal the federal nature of Plaintiff's claims.

## II. To the extent this Court determines remand is appropriate, Plaintiff's request for attorneys' fees and costs should be denied, as Defendant had an objectively reasonable basis for removal.

In addition to seeking remand, Plaintiff has requested that the Court exercise its discretion to award attorney's fees and costs. (*See* DE 14 at 1; DE 15 at 17). To the extent this court remands this matter, Plaintiff's request for attorney's fees and costs should be

denied.

Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney's fees, incurred as a result of the removal." The Supreme Court has explained, however, that "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005). "In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case", but a court's "reasons for departing from the general rule should be faithful to the purposes of awarding fees under § 1447(c)." *Id.* at 141.

Assuming the Court grants to remand motion, Duke respectfully submits that its basis for removing the case was objectively reasonable, for all of the reasons discussed above. Through the Complaint, document requests, and his putative expert, Plaintiff directly raised significant, disputed issues of federal law that are being litigated in other district courts across the country and that are central to Plaintiff's Complaint.

Plaintiff's accusation that Duke removed the case for the purposes of delay is without support. Duke removed the case in the time frame available to it, and after Plaintiff served discovery requesting correspondence related to the application of the Final Rule regulations and after producing an affidavit from their expert explicitly asserting federal

issues.[5] Plaintiff's own actions gave a clear indication that the true basis of their purported state law claims is compliance with Title IX standards.

This Court has exercised its discretion to deny requests for attorneys' fees where defendants interpreted a complaint as requiring federal law to be applied by the state court for substantial issues. *See Cty. of Moore v. Acres*, 447 F. Supp. 3d 453, 462 (M.D.N.C. 2020). The reasonableness of removal has also been found where significant federal interests were involved, even in cases where the case is remanded. *See Gafcon, Inc. v. AECOM Caribe, LLP*, No. 319CV00445FDWDCK, 2020 WL 96596, at *4 (W.D.N.C. Jan. 8, 2020) (*citing Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005).

Therefore, to the extent this should this Court decide to remand this matter, Defendant respectfully submits that Plaintiff's request for attorneys' fees and costs should not be granted.

## CONCLUSION

Because Plaintiff's claims arise under federal law and Defendant properly and reasonably removed the action to this Court, Plaintiff's motion to remand and the associated request for attorneys' fees and costs should be DENIED.

---

[5] To avoid disruption to Mr. Doe's education in the middle of the semester, after it removed the case Duke voluntarily decided to delay implementation of the suspension until the Spring 2021 term, allowing him to complete his Fall 2020 coursework.

22

This the 23rd day of December, 2020.

*/s/ DAN M HARTZOG Jr.*
DAN M. HARTZOG JR.
N.C. State Bar No. 35330
E-mail: dhartzogjr@hartzoglawgroup.com
*Attorneys for Defendant*
1903 N. Harrison Avenue, Suite 200
Cary, North Carolina 27513
Telephone: (919) 670-0338
Facsimile: (919) 714-4635

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this Response in Opposition complies with the 6,250-word limit set forth in Local Civil Rule 7.3(d)(1). Exclusive of the caption, signature lines, certificate of service, and any cover page or index, this Response in Opposition contains 5,963 words, as calculated using the word count feature of Microsoft Word.

This the 23rd day of December, 2020.

*/s/ Dan Hartzog Jr.*
DAN M. HARTZOG JR.
N.C. State Bar No. 35330
E-mail: dhartzogjr@hartzoglawgroup.com
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2020, I electronically filed the foregoing ***BRIEF IN OPPOSITION TO MOTION TO REMAND*** with the Clerk of Court using the CM/ECF system, which will effect service on all registered users, including the following:

Thomas, Ferguson, & Beskind, LLP
119 East Main St.
Durham, NC 27701
*Attorneys for Plaintiff*

                                     */s/ DAN M HARTZOG Jr.*
                                       DAN M. HARTZOG JR.
                                       N.C. State Bar No. 35330
                                       E-mail: dhartzogjr@hartzoglawgroup.com
                                       *Attorneys for Defendant*
                                       1903 N. Harrison Avenue, Suite 200
                                       Cary, North Carolina 27513
                                       Telephone: (919) 670-0338
                                       Facsimile: (919) 714-4635